24 F.(2d)—16

## BANKERS' LIFE CO. v. DIXON.

District Court, W. D. Pennsylvania. March 2, 1927.

No. 1511.

1. Cancellation of instruments ⚖=47—Evidence held to show that statements in application that insured was in good health were knowingly false, justifying rescission of policies.

Evidence that, shortly before filing of claim for insured's total disability, it was discovered that insured was suffering from paresis, a form of syphilis in its tertiary stage, *held* to show that insured's statements in his application that he was in good health, had never suffered from any ailment of the brain or nervous system, skin, or stomach, or rheumatism, were knowingly false, justifying company in rescinding policies for fraud.

2. Insurance ⚖=375(1)—Approval of insured's false statements in application by insurer's medical examiner would not preclude rescission of policies for fraud.

Even if insurer's medical examiner, with knowledge of facts, approved false statements by insured in application for insurance as to condition of his health and past ailments, insured's own falsehood to the officer passing on the policies was not to be justified, so as to preclude company from rescinding policies on discovering the fraud.

In Equity. Suit by the Bankers' Life Company against Mary Ellen Dixon, as guardian of the estate of Matthew M. Dixon, and in her own right. Decree for plaintiff.

Leon E. Hickman, Clark Miller, and Gordon, Smith, Buchanan & Scott, all of Pittsburgh, Pa., for plaintiff.

J. M. Henry and W. J. Connelly, both of Pittsburgh, Pa., for defendant.

GIBSON, District Judge. The plaintiff seeks to rescind two policies of insurance issued to Matthew M. Dixon on February 4, 1924. Each policy was for the amount of $2,500, and had a provision for the payment of $25 per month upon permanent disability, and it was also provided in each that it should be incontestable after two years from issue, except for certain reasons not of present interest.

On September 30, 1925, the insured, Matthew M. Dixon, claimed total disability benefits under the policies. Shortly prior to such claim it had been discovered that the insured was suffering from paresis, a form of syphilis in its tertiary stage. On January 5, 1926, the court of common pleas of Allegheny county, Pennsylvania, adjudged him to be a person of weak mind, and appointed Mary

Ellen Dixon, one of the defendants, his wife and the beneficiary under said policies, as guardian of his estate. The permanent disability benefit of $25 per month has been claimed from time to time upon each policy by the guardian. The plaintiff has denied any liability upon the policies, and has refused to pay such claims, but no suit to recover such benefit has been brought by Mrs. Dixon. As the limit of two years for contesting the policies was about to expire, the plaintiff has brought the present action to rescind the policies.

The basis of the action is the allegation that plaintiff was fraudulently induced to issue the policies by false statements made by Matthew M. Dixon in his application for insurance, the application having been made a part of the contract of insurance. The insured, in his application, in effect alleged that he had never suffered from any ailment or disease (a) of the brain or nervous system, (b) of the heart, (c) of the stomach or intestines, or (d) of the skin; had never had (e) rheumatism, gout, or syphilis; had not (f) had any sickness within the preceding five years, and had not consulted any physician for any disease within that period; (g) had never been an inmate in a hospital; (h) had never been injured or disabled in military service; and (i) had never applied for a pension. He further alleged that (j) he was in good health at the time of making the application.

The plaintiff has introduced testimony which fully established the inaccuracy, in varying degrees, of the foregoing answers of the insured. It has been admitted on behalf of the defendants that several of the answers did not reflect the facts, but it is contended that the incorrect answers were not made with intent to deceive and defraud the plaintiff, and counsel for defendants has pointed to the provision in the contract that "all statements made by the insured shall, in the absence of fraud, be deemed representations, and not warranties."

[1] The evidence discloses that the insured, while working as a machinist in the military service, was struck upon the face by a sledgehammer in the hands of a helper, and so lost a large number of his teeth. His service record, offered in evidence, does not show any confinement in a hospital by reason of this accident. At another time he was confined for six days in a service hospital by an attack of tonsilitis, and later he was in the hospital at Camp Dix, New Jersey, for dental treatment for six days. In 1921 he applied to the Veterans' Bureau for compensation. The application was based upon the loss of his teeth in service and resulting stomach trouble. Pursuant to this application, he was examined by a physician of the Veterans' Bureau, who reported a heart lesion. Subsequent to his application for insurance, insured was examined by other bureau physicians at different times, and to them he gave a medical history by which it appeared that not only had his teeth been knocked out in the accident occurring to him in service, but that in the same accident his skull had been fractured. He also complained of nervous disorder, rheumatism, neuralgic pains, and a general condition of health which prevented him from following his former occupation as a machinist. He also told of a skin rash with which he had been afflicted several years before the examination.

It must be remembered that the statements made to the Veterans' Bureau physicians, when made, were not admissions against the interest of the insured. The Auditor General's record tends to show that his skull had not been fractured in his service accident, and the Pennsylvania Railroad records show that he was employed by it (although not how steadily) from July, 1919, to July, 1922, and for a single day in June, 1923. On the other hand, a physician who examined him in September, 1925, found a depression of the skull which indicated a fracture, and the existence of a disease which confirmed his declarations of his inability to work as a machinist for some time prior to his application for insurance, and an inability to keep any other employment by reason of lack of nervous power. By that examination and its tests it was conclusively established, as admitted by both parties to the instant case, that the insured was afflicted with syphilis, and that the disease had reached the tertiary stage, which manifested itself in the form of paresis.

The course of a case of syphilis (with variations from the normal case) was detailed by several physicians in the instant action, and, knowing that the insured had syphilis for at least two years prior to his application for insurance, we also know that the insured was undoubtedly telling the truth in detailing to examining physicians the existence of a rash upon his body, his difficulties in walking, his nervousness, and his general inability to function properly. For the same reason we know that the insured, in his insurance application, knowingly answered falsely in declaring that he was then in good health, that he had never suffered from any

ailment of the brain or nervous system, nor of the skin or stomach, and that he had never had rheumatism. It is possible (although not probable) for one afflicted with syphilis to be ignorant of the name of his disease, but it is impossible for him to be ignorant of the fact that there is something very materially wrong with him. This is the testimony of the physicians who testified in the instant case.

From the foregoing it will be apparent that we have concluded from the evidence that the insured knowingly misrepresented material facts in his answers to the interrogatories accompanying his application.

[2] We have not discussed all the interrogatories alleged by plaintiff to be false. For example, so far as we have not considered the declarations of the insured to the effect that he had never been confined in a hospital, had never consulted a physician for any disease within five years preceding the application, that he had never been injured in military service, and had never applied for a pension. All these declarations are in direct opposition to the facts, as is admitted on behalf of the defendant. It is contended, however, that Matthew M. Dixon, a month or more before his application, had consulted the physician who examined him on behalf of the plaintiff upon his application, and that he had then told of his injury in France, the loss of his teeth, and his stomach trouble. This contention is denied by the examiner; but, even if we were to accept it as true, we doubt its sufficiency as a defense to the admittedly untrue answers. The defense has offered no testimony to show that the insured did not answer as set out in the application, or was ignorant of the answers recorded. The insurance contract distinctly declared that no agent of the company, except certain officers, had any right to accept any representation or information not contained in the written application for the policy; but, even if the insured were ignorant of this provision, even less than ordinary common sense would have told him that no agent had authority to accept and transmit to a superior for approval an application which contained untrue answers. Even were we to assume the approval of the examiner, the applicant's own falsehood to the officer passing upon the policies is not to be justified.

Let a decree be drawn for the rescission and cancellation of the policies described in the bill of complaint, upon the payment to Mary Ellen Dixon, guardian of Matthew M. Dixon, of the sum of $135.52, the amount of the policy premiums paid the plaintiff.